Good morning, Your Honors. Michael Barkley for Monolithic Power Systems. This is an appeal from a district court order granting a motion for foreign discovery under 28 U.S. Code Section 1782. After the district court order, the U.S. Supreme Court clarified the discretionary factors to be considered in evaluating a Section 1782 application. The district court had interpreted the statute so as to exclude this discretion, which we believe to be an error of statutory interpretation, which this court would review de novo and which is resolved by the Supreme Court's Intel v. AMD decision. In any event, the district court did not consider the discretionary factors that Intel, the Supreme Court said it now does have, and that alone requires a reversal and a remand so the district court can now rethink its position in view of its discretion, which we now know it has. And that remand is the relief that we seek here today. So under Intel v. AMD, there is basically a two-step process in these cases. The first step is to apply a three-part test, is the applicant entitled to discovery? And the three steps are, is the applicant an interested person? Is the discovery for use in a foreign proceeding? And is the application made in a jurisdiction where the respondent producing party resides? The second step is, if there's an entitlement to discovery, should the court nevertheless exercise its discretion to order the discovery? And that second step is established by the Intel v. AMD case and by subsequent cases that have come after it, one of which the Schmitz case, which came down a few months after the Supreme Court decision from the Second Circuit. And there's other post-Intel cases at the district court level, including the remand from the Supreme Court in the AMD Intel case. And if you'd like the Westlaw citation of that, I can provide it. Now, in this case, in our case here, the district court only did the first step and applied the three-step process and concluded that as the district court read the statute, discovery of some sort was therefore mandatory. And the district court didn't exercise the discretion that no one knew it had until the Supreme Court actually ruled. So the three factors were that the Intel decision set forth that we think are appropriate here. First is the responding party here a party to the foreign proceeding, certainly true here. Second is the account of the foreign tribunal, what's going on in the foreign tribunal, how its discovery procedures work. Is the application here in the United States an attempt to circumvent foreign proof-gathering restrictions? And a third point we make is the relevance of a protective order in related cases. And here, if you look carefully at the record, the district court basically said, the magistration had said that she didn't think she was supposed to get into the details of how the Taiwan court operates, indicating she did not exercise her discretion. So to go through the AMD versus Intel factors, again, the first factors clearly met. My client, Monolithic Power Systems, is a party in Taiwan. We're subject to the jurisdiction of the Taiwan court, where I'm unaware that the Taiwan court has made any request for evidence from my client as to which it did not reply. The second factor, which we urge, is the nature of the discovery request as they related both in Taiwan and here. In Taiwan, before this application was filed, the petitioner, O2Micro, went to the Taiwan court and asked for some very broad discovery. The Taiwan court, after thinking about it and after reconsidering, only ordered very narrow discovery. And lo and behold, a few months later, O2Micro files in the district court here in California a very broad application for discovery, which asked for things that the Taiwan court already said it didn't want and it was not going to order my client to produce. And interestingly, even though the district court here did only wind up ordering narrow discovery, after all this time, and it's been several years now, O2Micro is still not, to our understanding, as the Taiwan court, if it wants these materials. It's not a very hard request to make. And if O2Micro made that request and we had that piece of information from the Taiwan court, this court and the district court on the remand I'm asking for could fully evaluate that intel factor. The Kestrel Cole case from the Seventh Circuit is, I think, helpful in the sense that it says, look, if the documents become important, you can see if, in that case, the Australian court really wanted them, and if it doesn't, then you can renew proceedings in the United States for them. The third point, which is of great importance and one of the important reasons why we're here, is confidentiality. The Taiwan courts really don't recognize protective orders like U.S. courts do. They don't do it the same way. The Taiwan lawyer for the O2Micro, in the record, acknowledged that attorneys' eyes only confidentiality restrictions are, quote, unusual, end quote. That's the supplemental excerpts at 54. My client's Taiwan lawyer said, basically, you don't have these type of confidentiality agreements at all. And there's no dispute but that the documents being sought are my client's confidential customer, business, financial-type documents. There's no way to – there's no way to – practical way to ensure their confidentiality in Taiwan. And the district court, in ordering a protective order that specifically said would not govern the Taiwan court, made no attempt even to try. So we're faced with the very real prospect that contrary to such as the intel from the Supreme Court and four pillars from this court, that our documents could be shipped over to Taiwan, essentially stripped of the protection they have under the protective orders in the related litigation in this country, and sent to Taiwan for who knows what to happen to them. So those are the factors I think the district court did not consider. And on remand, I wish – I would suggest that the district court be permitted to do. There's certainly no harm to O2Micro if a remand is ordered at this point, so that can be considered. There was an issue about jurisdiction raised in the briefing. Would the Court like me to address that shortly? Yes. Yes. So I'd like to point out, this is – this is not a review of a discovery order in the underlying patent litigation going over in Oakland between O2Micro and MPS. This is a collateral separate proceeding. It would have to go to the Federal Circuit. That's correct. That's correct. That's where the appeals normally would go.  So the appeal is to this circuit. And as a collateral separate proceeding, it's like a third party or administrative subpoena type proceeding, which courts in this circuit and Judge Friendly's opinion in the direct government of India case in the Second Circuit have analogized as being – resulting in immediately appealable orders, because they are – because they are collateral. What I did that I thought was helpful in terms of trying to figure out the jurisdiction issue is I re-read all the cases that have been cited in the briefs at the appellate level, and I tried to grid them according to what they were, what they ordered, what happened below, and what the appeal status was. And so throw out, for example, the cases where there was an order below denying any discovery, because obviously that's immediately appealable. But there's a fair number of cases that are in the record here that – where there was orders granting discovery and orders granting discovery of the real party in interest, such as my client, Monolithic Power Systems. So from the Ninth Circuit, there's the Sealed One case and the Tokyo case from 539F2nd, which fall in that category. In the Second Circuit, there's the Giannulli case and the government – Let's get to kind of what the problem is. We know that virtually every case has said it's appealable. Right. In the Supreme Court, we don't know. They didn't comment on it, so we can't actually divine anything from their decision in AMD. But we have this case, Hogason, which that really poses the issue. We have that case and then we have all the other ones you're about to talk about. Yes. And we – one panel can't overrule. So the real question is, why doesn't Hogason apply as opposed to some of the others, or do we need to have an embankment to reconcile Hogason with the other cases? I mean, you obviously could take it on bonk if you felt a need to reconcile Hogason, but let's look at Hogason a little more carefully, if we could, in terms of what it did. So Hogason relies upon a couple of Supreme Court cases, the Alexander case and Cobbledick, and for the proposition that there has to be an actual contempt finding before you can have any sort of appellate jurisdiction, even in a collateral proceeding like this one. And that's never been construed by the Supreme Court as having the ironclad and absolute rule that O2 Micro asserts here. And if it's not ironclad, perhaps you don't need to do anything on bonk. So, for example, the Church of Scientology case. Has the Supreme Court ruled on that issue? No, it hasn't. Because in the Intel AMD case, the district court order was denying discovery, and this Court reversed. So if there's an order denying discovery, there has to be immediate appellate jurisdictions. There's nothing else left. So we're talking about the issue where there's an order granting discovery or there's an order, say, denying a motion to quash discovery that's been ordered. I believe they're procedurally the same thing. The reason that I ask the question, this is why the Supreme Court has ruled on this precise issue, is really based on Judge McCoon's question. What is the law of the circuit? Is Hogason the law of the circuit, and therefore are we bound by it? Well, I would argue that Hogason – if you want to get to which was the first decision, so – It wouldn't matter. I mean, in other words, it's always what's the first decision. But let's say, you know, one can't overrule another. Is there something before Hogason under this statute? There's nothing before Hogason under the statute. What there is before Hogason is the DI operating case, for example, a 1963 case from this circuit, which said that an order granting an administrative – an administrative subpoena is immediately appealable. Now, in the Second Circuit, in the Government of India case, Judge Friendly said that type of thing is immediately appealable in a 1782 context. So between the DI operating case from this circuit, Judge Friendly's opinion from 1967 – The Ninth Circuit is not bound by the Second Circuit. So what you have is this Hogason case, which says in a 1782 context, which is the one we have here, and you grant discovery, you have to have this contempt in order to have it appealable. Right. We don't have that. Everybody agrees. And then we have these subsequent cases, most of which don't even mention – they just assume jurisdiction. Well, I mean, this Court's opinion is an unsealed one, and the Tokyo case I mentioned. They don't cite Hogason. They don't cite Hogason in our factual situation. So I agree it's sort of an unusual situation. But what I was going to run down was the fact that if you look at the – if you can look – I could do two things. One is point out how the Supreme Court has sort of eroded the rule that Hogason replied on, if I could do that briefly. Sure. Another is I was looking at the Hogason case very, very carefully, and there's a serious flaw in its application of the Alexander contempt rule in the 1782 type proceedings. But it's still binding on this, isn't it? However flawed? Well, if it's been – if it's been eroded by the Supreme Court and then no one's cited it for 30 years, then perhaps it's – no one is citing it for a good reason that no one considers it to be good law anymore. There are really old cases that you can look up that have never been, quote, overruled, end quote, but no one cites them anymore because no one thinks they're good law anymore. And that could be this case could fall into that category. So because they're not cited, they are no longer the law of the circuit? I think – I think that's very possible. They're – I – I don't know that rule. Okay. Well, I hate to – So maybe – maybe if you think it's been eroded by the Supreme Court, in other words, we could agree with you that it's wrong, probably is wrong in light of everything we know, but without making a decision and figuring it out. But nonetheless, it's in the circuit. So maybe if you think it's been eroded by the Supreme Court, that might be helpful. Yes. So, for example, the Church of Scientology case, which was a 1992 opinion from the Supreme Court, which has been cited in the briefs, if you look at 506 U.S. page 18, note 11, it referred to one exception to the Alexander line of cases known as the Chroma Doctrine, which had an exception for subpoenas to third parties. That post-stated Haugesund, and it – it said this isn't – Alexander is not an absolute rule. Because Haugesund is saying Alexander is an absolute rule, and O2 Michael here is saying Alexander and Haugesund are an absolute rule. And I just happened to be reading something earlier this week, which is not in the briefs, but it's a case everyone's heard of. Two months after Haugesund was cited in 1974, the Supreme Court recognized another exception to the Alexander line of cases in the Watergate tapes case involving the U.S. v. Nixon case. And I just happened to be reading it for another reason, and I saw the first part of the opinion has to do with appellate jurisdiction. And that case also involved an order from the district court refusing to quash a subpoena, in other words, granting discovery. And the President took an immediate appeal, which bypassed the D.C. Circuit and went straight to the Supreme Court. And the first thing – 1292 certification? No. Okay. No, no. These were appeals under Section 1291. I'm pretty sure. I'd have to check the case. I didn't check it for that reason. And I could, if you would like a subsequent letter, I can address that issue. We can look it up. Yeah. But it's 418 U.S. 683. And the case held that the Supreme Court had jurisdiction and said, you know, Alexander has been eroded. There's another exception here, which I'm not obviously arguing applies in my case, but it basically said we can't expect President to be held in contempt or a court to want to hold the President in contempt. So we have at least two cases following Hogason which said this rule is not absolute and not necessarily followed. And the other point I'd like to make about Hogason is the reason – if you look at the reasoning – if you need the exact page of the opinion, I'll go get it. But if you look at the reason why it applies the Alexander contempt proceeding, it said 28 U.S.C. Section 1784 has a contempt provision in it. Therefore, Alexander must apply and the contempt rule must apply. So I thought that was kind of interesting. I went to read Section 1784, and, yes, it does talk about contempt. But what it talks about contempt for is discovery under Section 1783, which is a subpoena to a person in a foreign country who is a U.S. citizen, to say, come back here and give discovery. You can't flee and do that. So Hogason based its decision on Section 1784 to apply the Anderson contempt rule, and it did so based upon a misreading of the statute, because Section 1784 doesn't apply to Section 1782, and we're here under Section 1782. Can I ask another question? There's two parts to the discovery request, documents and depositions. And until they get the documents, they don't know what the depositions would be. Let's say this is appealable. So you come here now and the documents. Does this mean that basically this Court is going to be a discovery master for every time discovery is ordered? I mean, how do we know what's the final order in this case? Well, for the purposes of the arguments for making an appeal, this is the final order. The district court granted discovery, granted documents. Implicitly in the order denied depositions, there's been no – there was – the application requested depositions, but you can look at the district court orders and they didn't know – no depositions were ordered. So – There was no request for specific depositions, correct? Perhaps, but if they want depositions, that would be another 1782 proceeding. If you're worried about being a discovery referee, I agree that's a problem, and I would – you might – I hate to cite dissenting opinions from another circuit, but you might want to read Judge Feinberg's dissent in the Malev case, which we cited in the briefs, where he says this statute – it's kind of an unusual statute. It doesn't come up very often. I was shocked when I practiced law for 20 years and this thing comes in the door and I said, what the heck is this? It's a very unusual statute. And Judge Feinberg said this statute can't be as broad as it means because courts of appeal and district courts become discovery referees for foreign countries. That doesn't make any sense. So I agree that's a – that's a granted concern. The Supreme Court read – and this Ninth Circuit in Intel read the statute literally and said the way the statute words, the entitlement discovery is very broad. But the Supreme Court said there's discretion as to whether or not to order it. And on remand in the Intel AMD case, Judge Ware denied the discovery request outright. It's an opinion that's on Westlaw, if you want to look it up. So that remand is the request that we've asked for. It's nothing in view of the statute. Ginsburg. Can we retain the small amount of time remaining for your rebuttal? I'll be out 20 seconds if I need it. Okay. I'll probably add a minute to that.  Thank you, Your Honor. Good morning, and may it please the Court. My name is Virginia DeMarchi, and I represent the appellee O2 micro. Unless the Court prefers another order of argument, I thought I'd address the jurisdiction question first. And I'll start with the issues, the cases that were raised by appellants in their reply brief, which we didn't have an opportunity to address, and focusing specifically on the Hogason case, which is the governing law of this circuit. Hogason actually considered the case that MPS referred to here in argument, the Director of Inspection for the Government of India, which was a 1967 decision in the Second Circuit by Judge Easterbrook. Hogason considered that case, but considered it distinguishable. And in fact, that case, the distinction that the Court found relevant there was that the letter of rogatory request was seeking discovery from a third party, whereas in Hogason, the discovery being sought was from a party to the foreign proceeding, which is, of course, the case that we have here. So my first point would be to suggest that the distinction that might be helpful to the Court in trying to figure out how to deal with the jurisdiction issue is, one, having to do with the parties to the discovery proceeding and the underlying foreign action. This was, in fact, a distinction that the Ninth Circuit itself made in the case called Sol District Criminal Court, and that's an abbreviated title. It's a 1977 case, and the Court, in fact, recognized the distinction of third party discovery. And this actually dovetails with comments that my esteemed opponent made about the what he referred to as the erosion of the Supreme Court findings on jurisdiction in the Alexander and Kobeldich line of cases. It's not so much an erosion as an exception for third party subpoena practice. So in the situation where a party is subpoenaed, it is still the rule in the Supreme Court and in the Ninth Circuit that the party may not appeal the denial of a motion to quash the subpoena, but has to either obey it or be held in contempt and contest the validity of the contempt finding. The exception is if there's a third party who does not really have an interest in the underlying proceedings such that they wouldn't risk a contempt citation. So these other courts in other jurisdictions that MPS is citing to have followed that line of reasoning in cases where that kind of reasoning might be applicable in the 1782 context. That's not been the case in the Ninth Circuit, where the Ninth Circuit has preserved the Hoggison, has in fact emphasized the Hoggison distinction, making the distinction between third party recipients of the discoveries. Kagan Are there anywhere else it's cited, Hoggison is cited with respect to jurisdiction under the statute? Sherry I do not believe so, Your Honor. Kagan It's interesting to me as a practical matter, since you want the discovery why you'd be fighting so hard for this interpretation, has this case gone to the Supreme Court, has it gone to mediation in the Ninth Circuit? Sherry No, it has not, Your Honor. And the jurisdiction question, in fact, we were asked to brief it on in connection with the merits. The real issue, though, and I think this is one that avoids the problem of having to have an en banc review of Hoggison, is that however you slice it, the decision was not final. The magistrate judge and the district court judge reviewing the magistrate judge's decision left a couple of things clearly open to be resolved. First among those was the confidentiality issue which is being raised here was supposed to have been dealt with by a protective order, which the parties were to negotiate and then present to the court. That never happened because the appeal was taken before the parties completed their negotiations and before there was anything to submit to the court. In addition, the application that Otemaiko originally made asked for depositions in addition to document discovery, and it explicitly recited that the depositions would be taken of individuals who could be identified only from the documents that we expected would be produced or hoped would be produced in response to the application. We weren't in a position to ask for the depositions yet. And finally, as the district court recognized that there was a practical matter, I thought of that. You know, if you turn over all the documents and then say, well, it's not final, let's just wait until we get to the depositions and then we'll figure out what we ordered there, if there's any harm, it's already been done at that point because you've had to turn over the documents and you've had the confidentiality issues on the table. So even if one were to consider that the deposition issue would not have precluded a final order here, there still was the problem recognized by the district court that there was no time set for compliance, and there's a very good reason for that. It's because the parties had not done the further step that the district court magistrate judge had ordered us to do, which was to negotiate a protective order and submit it to the judge if there was a dispute. So this Court does not have to reach the jurisdictional issue at all. Kagan So you're saying it's really the confidentiality thing is still out there. Certainly. That is that's and definitely makes this case not final, even if one were to say that 1782 actions were to be treated as third-party subpoenas or administrative proceedings and immediately appealable. So once it was appealed, did you stop any discussion of the confidentiality? We view that the appeal taken to this Court deprived the district court of jurisdiction. It sure did, but it didn't deprive the counsel of the ability to talk to each other. The answer to the Court's question is we did not contend talking to each other, and we did not submit anything else to the judge. All right. What happens in the district court if we were to find there's no jurisdiction? If there's no jurisdiction for this appeal, then this case has to go back to the district court and the parties would have to go back. I understand. But what happens then in the district court? Will those orders be enforced? We would certainly hope so. We envision that what would happen is the parties would have a go at the protective order, probably would not agree, would be back in front of the judge. Certainly O2 micro would be asking for a time to be ordered for compliance with the discovery request, and then it would be in MPS's decision whether to comply with that or to risk a contempt citation. That's how these things should proceed in this kind of situation. And even if contempt weren't a prerequisite to appeal, it would be coming here with a confidentiality order in place, then? Yes, it would. So that issue that MPS raises as a point of discretion exercised by the district court would have already been resolved further by the court below. If the Court has no further questions on the jurisdiction point, I'd like to turn to the merits of the appeal on 1782. This is an abuse of discretion standard that applies here. I do have a question. Counsel said that the Huggison case has been eroded and therefore it's not controlling on this panel. Our circuit law is that if the Supreme Court has eroded, made inapplicable one of our decisions, this three-judge panel can ignore it or can say we're not bound. What is your position on that argument? I don't believe that Huggison has been eroded by the Supreme Court, and for the very plain reason that the Supreme Court has not had occasion to address jurisdiction in a 1782 action. When counsel spoke of cases in the Supreme Court being eroded, I believe it was this carve-out, which is called the Pearlman Doctrine for third-party subpoenas. I should mention, however, that some of the cases that counsel cited in the argument are not ones that were briefed below, and I have not had an opportunity to review those. So I can't comment on something I have not read. But I do not believe it's correct to say that Huggison has been eroded or that anything in the Supreme Court's jurisdiction practice has or would necessarily imply an erosion of that case. There are cases from the circuit that appeared to have ignored Huggison. Isn't that true? I suppose it could be said that they appeared to have ignored it. They simply didn't consider the point. But in all of those cases, and I'm referring specifically to S.E.A.L.D. 1 and the Tokyo District Prosecutor's Office, there was finality of the order in the sense it was a denial of a motion to dismiss in the one case, a 1782 application, and in Tokyo District Prosecutor was the denial of a motion to suppress evidence collected in connection with the 1782 proceeding. It was a motion to suppress evidence in a foreign jurisdiction. So there was nothing more for the Court to do in either case. So the jurisdiction question that we're debating here didn't come up in those two cases. Okay. So now I'll turn my remaining time to the merits. The standard that governs this Court's review is abuse of discretion. And it is not the case, as MPS contends, that the district court below found that it had no opportunity to exercise discretion here. Quite the contrary. What was argued below was that there was a discoverability requirement. That is, that there had to be a showing that the evidence that O2micro sought, the documents that O2micro sought for use in the proceeding in Taiwan had to be discoverable in Taiwan. And further, MPS argued that not only did it have to be discoverable, but that O2micro had to obtain the Court's permission in Taiwan in order to engage in the application for relief under 1782. The Intel v. AMD case did not change the Ninth Circuit rule that was applied by the district court. To the contrary, Intel v. AMD affirmed in all respects this Court's holding in that case, and that was the law that the district court judge applied. There is no prescribed checklist for exercise of discretion under 1782. And contrary to what MPS has advocated, there are not a certain number of factors that must be considered in order for discretion to be exercised appropriately. The Court in Intel v. AMD stated that it was concerned that sufficient scrutiny had not been given below to the 1782 application. The Court below had found that the application simply wasn't authorized based on this discovery, this misplaced view that there was a discoverability requirement. So in the Supreme Court's decision, there was a suggestion, and I believe the term suggest was used, of factors that might be considered in that particular case. This is not a checklist of factors that must be applied in all cases. So putting aside the notion that there was a change in the law that's simply not borne out by a reading of Intel v. AMD. The statutory purpose of 1782, there's two parts that are recognized. One is to ensure the efficient collection of discovery for use in proceedings abroad, and to show by example that other countries should follow our procedure as well. So it would be an abuse of discretion indeed if the district court would determine that, for example, 1782 was unwise or unfair to competitors, as MPS has suggested, or that its objectives were somehow improper or unfair, and that they would deny discovery on that basis, which if you read the brief submitted by appellant, that is almost a suggestion that's in there. And that certainly was not what the district court engaged in. The district court engaged in looking at all of the facts that were presented to it, including those that have been cited by the Intel v. AMD court at the Supreme Court and by this court in the appellate proceeding. And the court very carefully considered all of the issues that MPS raises here. Those are in particular that the parties were both litigants in the underlying proceeding. That was very much briefed and very much argued below. The fact that discovery had been sought in the Taiwan proceeding. And I want to, at this point, make a comment about the characterization MPS has given of that proceeding. It is true that the Taiwan court was asked by O2Micro to submit certain questions to the Customs Office and to ask MPS to provide certain evidence. The court did ask some of those questions and did ask MPS to provide evidence. The court did not affirmatively reject, and there's nothing in the record to suggest that, any broader request. The court simply asked for certain things and not others. MPS did not obtain a statement from the Taiwan court saying that it wouldn't want this information. And in fact, the Intel v. AMD Supreme Court decision cautions courts against inferring from a foreign tribunal's lack of interest in discovery or even in some cases affirmatively saying we don't want to have that. It cautions the district courts against inferring too much from that. So it would have been improper had the district court judge looked at the fact that the Taiwan court had only ordered certain things and not yet ordered others as a reason for precluding the relief that was requested. But she did consider that issue in exercising her discretion in this case. The final issue that MPS raises is the question of confidentiality, which we've already touched on. And the gravel line of their argument appears to be that because a court in the United States cannot control what a court in a foreign jurisdiction does with information, then discovery should not be had. And if that were the criteria by which we were to resolve 1782 applications, there would be no discovery ordered ever if it potentially involved any kind of confidential information. So that can't be a rule that would preclude discovery in this case. In fact, the confidentiality question was of concern to the district court, and the court did consider all of the arguments of counsel, as well as the representations that were made by both parties in the U.S. and by counsel representing O2 Micro in Taiwan, that the information would be the subject of an outside counsel's eyes only treatment, and that O2 Micro's counsel in Taiwan would ask the Taiwan court to keep these things confidential, if in fact they were ever submitted to the court. And we're sort of assuming that they would be, but of course there's no requirement that they be submitted wholesale to the court in Taiwan, the documents that would be produced. That confidentiality order could address that, correct? Certainly. So in short, the intel versus AMD decision is not a reason to have a court in Taiwan to do not change the law, and is not a reason to think that the district court's exercise of jurisdiction should be changed in any kind of way, because it's not a checklist of factors that must govern that exercise of discretion. Just a moment. I would like to point out two distinctions that may be of help to the Court, and that is in the case of Schmitz, which is the case involving the German government, which is cited in MPS's briefs. I believe we distinguished this in our papers, but it was raised in oral argument here. The German government in that case opposed, affirmatively opposed, the discovery being sought in the United States. And it wasn't a situation in which that was a reason for necessarily precluding relief under 1782. It was, however, a factor in the Court's decision to, in its discretion, not allow that discovery to take place. Totally different circumstances here, where there has been no affirmative rejection or statement that the Court does not want it, want the evidence that has been sought, or that it would interfere with the national sovereignty, which was the situation in the Schmitz case. In the Kestrel case, again, very different facts. In that case, the 1782 application was made to a U.S. subsidiary of a company that was engaged in litigation in Australia, and it was for use in the Australian proceeding. And what the Court ordered in that case, the district court order, ordered was that the U.S. subsidiary be required to get documents from Australia and the United Kingdom and then send them to Australia. And the appellate court found that to be a misuse of 1782. Certainly not the case here. O2Micro is seeking discovery of documents that we believe are located in the United States, and we only seek documents located in the United States, documents which are probably beyond the geographic jurisdiction of the Court in Taiwan, which bear directly on the injunction violation proceedings in Taiwan. And the district court has very narrowly tailored the discovery it has authorized to address only those issues, the question of the violation of the injunction in Taiwan. If the Court has no further questions, I'll yield the rest of my time. Thank you. Thank you. One question I'd like you to address is why, since confidentiality remains to be negotiated, we should be even hearing it at this point, since we don't know the context in which the discovery has been ordered or the parameters. Well, the – if you look at the last sentence of the magistrate judge's opinion – this is at ER 208 – she states that the protective order should be focused on the use of the discovery by the parties rather than the conduct of the Taiwan court. So that is enough of a… We don't know what the confidentiality order is going to say. I agree you don't know exactly, but in terms of what's – that disposes of anything that's important of what's left. The Court's saying we're not going to deal with Taiwan, we're not going to try to make this enforceable in Taiwan, we're not going to restrict the Taiwan court. That's like having a court say, you know, go out and resolve this by stipulation and I'm telling you in advance, you know, my kind of druthers on the thing. You can't appeal that to this court and say, well, you kind of know what the judge's druthers were, so go ahead and hear it. Right. What I'm just saying is in terms of – in terms of the point we're making under the Intel AMD factors, what the district court said and what the district court told us to enter, I can't submit something to district court, they're just going to overrule again because that'll – that'll be pretty much it. So in terms of the arguments we're making as to discretion under Intel AMD, the district court has already told this court and us what it's going to do about confidentiality. So anyway, if that answers your question, if I could take this. Okay. I think – I think there's no further questions, so the case will be submitted. Thank you. Okay. The case of O2 Micro v. Monolithic is submitted. I should thank both counsel for arguments and for the briefing on the issues that we
judges: Hug, Alarcon, McKeown